**STATE of Missouri, Respondent,**

v.

**Gary Dean WELCH, Appellant.**

**No. WD 39797.**

Missouri Court of Appeals,
Western District.

June 28, 1988.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 2, 1988.

Application to Transfer Denied
Sept. 13, 1988.

Van B. Adams, California, for appellant.

William L. Webster, Atty. Gen., Theodore A. Bruce, Timothy W. Anderson, Asst. Attys. Gen., Mark A. Richardson, Asst. Pros. Atty., Jefferson City, for respondent.

Before MANFORD, P.J., and TURNAGE and COVINGTON, JJ.

MANFORD, Presiding Judge.

This is a direct appeal of a conviction for driving while intoxicated, in violation of § 577.010, RSMo 1986. The judgment is affirmed.

Appellant formally presents six points, but they are best described as variations of a common theme. They are summarized as follows:

Appellant charges the trial court erred in failing to sustain his motion to suppress evidence of his intoxication, because said evidence was secured as a result of a road-block operation and any evidence secured as a result thereof was (a) obtained without a warrant or any reason to suspect that appellant was violating any law and thus was a per se violation of the Fourth Amendment and (b) obtained by an unreasonable seizure, in violation of the Fourth Amendment. He also alleges that (c) the roadblocks and evidence secured thereby were a per se violation of Mo. Const. Article I, § 15; (d) that said evidence was obtained by an unreasonable seizure, in violation of Mo. Const. Article I, § 15; (e) that said evidence was obtained in violation of § 43.200, § 577.041, and § 577.037.4, RSMo 1986; and (f) that the entry of judgment against him was erroneous, because the evidence in support thereof was obtained by reason of a roadblock.

This matter was tried to the court without a jury. The facts in this case are rather simple and for the most part, not in dispute.

On the night of July 5, 1986, the Missouri Highway Patrol established a roadway sobriety checkpoint, commonly referred to as a "roadblock" on U.S. 50 Highway in Apache Flats, Cole County, Missouri. This particular location was selected as a result of an evaluation of alcohol related arrests and accidents made over a prescribed period of time by Troop F of the Missouri Highway Patrol. The roadblock operation was planned in such a manner as to include a sign reading, "Sobriety Checkpoint Ahead," and flares were displayed to route approaching traffic. Patrol vehicles with flashing lights were readily visible for moving traffic, and a trooper with a light directed vehicles to stop or proceed. Vehicular traffic moving in both directions was stopped. The procedure employed when a vehicle was stopped called for a trooper to approach the vehicle, ask to see the operator's motor vehicle license, and make a general observation of the operator.

Appellant was stopped and a Trooper Hale asked for appellant's operator's license. Trooper Hale noticed a strong odor of beer on appellant and that appellant had difficulty in presenting his operator's license. When asked, appellant got out of

his vehicle. He was also asked to perform certain "field sobriety tests", which he did, and Trooper Hale noticed that he was unsteady in walking. He first denied that he had anything to drink, but finally admitted to drinking beer during the afternoon. Appellant also displayed difficulty in reciting the alphabet and had a poor response of eye movement (technically referred to as horizontal gaze nystagmus).

The trooper believed appellant to be intoxicated. Appellant was placed under arrest and taken to the county jail for a breathalyzer test. Appellant was informed of his rights to refuse the breathalyzer test and the consequences of refusal. This is often called the "implied consent test". Upon testing, appellant's blood was shown to have a .17% concentration of alcohol.

At trial, appellant filed a motion to suppress, and after hearing, said motion was overruled. At the close of the evidence, appellant was found guilty and a fine was imposed. This appeal followed. Any additional facts deemed applicable to the disposition of this appeal will be set forth *infra*.

As noted above, since appellant's alleged errors are variations upon a common theme, they are taken up conjunctively in this opinion. It is noted from the outset that appellant makes no challenge to the testing method or the function of the machine which established under law that he was intoxicated. In addition, he makes no challenge to the evidence which clearly established that under the law he was intoxicated. Indeed, from this record it should be noted that any such challenge would. have been meritless.

Stated in simple terms, appellant asserts that roadway sobriety checkpoints or roadblocks, as they are commonly called, are per se a violation of a citizen's constitutional rights. One should not assume that appellant totally opposes society's right to protect itself from those operators of motor vehicles who, by design or indifference, choose to combine the elements of "booze" and a motor vehicle which too often establishes a serious, if not fatal, combination; but rather, appellant attacks the method of the roadblock to provide that protection. It

is his attack upon that method which serves as the basis of this decision.

This proceeding has provided the first opportunity for the courts of this state to directly and precisely take up the question of the constitutionality of roadblocks as a means by which the serious problem of drinking while driving might be addressed.

Appellant's argument is summarized as follows:

The trial court erred when it denied his motion to suppress and when it entered judgment against him, because both actions were based upon evidence secured in violation of his Fourth Amendment rights, because there was no probable cause for his arrest, and he was entitled to be free from unreasonable search and seizure. Appellant extends his argument by further asserting that in addition to invasion of his Fourth Amendment rights, his rights under Mo. Const. Article I, § 15 of the Missouri Constitution were also violated. He continues by asserting that the roadblock violates his rights under §§ 43.200, 577.041, 577.-037.4 and 577.039, RSMo. He then concludes that all the evidence against him was tainted and thus the "fruit of the poisonous tree".

Appellant is correct when he discloses to this court that the federal courts and several of the state courts have wrestled with this issue. As will be observed *infra*, the results have been varied. The benchmark federal case is *Delaware v. Prouse*, 440 U.S. 648, 99 S.Ct. 1391, 59 L.Ed.2d 660 (1979). From this decision, numerous cases have followed and a brief reference to these authorities is made to set the background for the ruling in this proceeding.

*Prouse* ruled that the random stopping of a vehicle and the detaining of the occupants constitutes a seizure within the Fourth Amendment of the United States Constitution. The United States Supreme Court went on to declare that the "permissibility of a particular law enforcement practice is judged by balancing its intrusion on the individual's Fourth Amendment interests against its promotion of legitimate governmental interests." *Delaware v. Prouse*, 440 U.S. at 654, 99 S.Ct. at 1396.

It must be noted that *Prouse* addressed the issue of "random or spot checks" of vehicles for proper registration and licensing. In its opinion, the United States Supreme Court noted its prior decision in *United States v. Martinez–Fuerte,* 428 U.S. 543, 96 S.Ct. 3074, 49 L.Ed.2d 1116 (1976), approving "checkpoints" by the border patrol in policing the international border between the United States and Mexico. *Martinez* followed the ruling in *United States v. Brignoni–Ponce,* 422 U.S. 873, 95 S.Ct. 2574, 45 L.Ed.2d 607 (1975), which had disapproved random or spot checks by roving patrols for seeking out illegal aliens. In *Prouse,* the court ruled that random or spot checking of vehicles for the purpose of checking for registration and licensing, even though that might be in furtherance of public safety, was not a permissible activity which overcomes the individual protections provided by the Fourth Amendment.

What appears from a reading of *Prouse* and *Martinez, supra,* is the following: Random or spot checks are not permissible absent a showing of a violation of the law or reasonable suspicion that a law has been violated. Checkpoints, if they are designed to stop all traffic and are supported by a valid public interest, are permissible.

Some of our sister states have addressed the issue in the following manner. In the Commonwealth of Massachusetts, the court in *Commonwealth v. McGeoghegan, et al.,* 389 Mass. 137, 449 N.E.2d 349 (1983), ruled that roadblocks conducted for the purpose of detecting drunk drivers were unconstitutional. In so ruling, the court noted that there is a standard of reasonableness required by the Fourth Amendment and that stopping the defendant's vehicle was a seizure within the Fourth Amendment. The court stated that for such roadblocks to be permissible,

> it appears that the selection of motor vehicles to be stopped must not be arbitrary, safety must be assured, motorists' inconvenience must be minimized, and assurance must be given that the procedure is being conducted pursuant to a plan devised by law enforcement supervisory personnel. While we do not sug-

gest that advance notice is a constitutional necessity, advance publication of the date of an intended roadblock, even without announcing its precise location, would have the virtue of reducing surprise, fear, and inconvenience. Such a procedure may achieve a degree of law enforcement and highway safety that is not reasonably attainable by less intrusive means. Also, while we do not suggest that roadblocks can only be constitutional if prescribed by statute or appropriate governmental regulation, we think that procedures conducted pursuant to such authorizations and standards would be more defensible than would other procedures.

*Commonwealth v. McGeoghegan,* 449 N.E. 2d at 353.

The court then proceeded to note the absence of the requirements detailed above and further noted that the roadblock area was poorly lighted, unsafe for motorists, that the mechanics of the roadblock were left to the discretion of on-scene officers, that the officers were allowed their own discretion as to which vehicles to stop, and that traffic was backed up some two-thirds of a mile. The court concluded that evidence failed to establish a lack of arbitrariness and undue delay and ruled that roadblocks, under such facts and circumstances, were unreasonable and thus unconstitutional.

It appears safe to conclude that Massachusetts would not rule that roadblocks are unconstitutional per se, but rather upon the necessary criteria being met, such activity would be constitutional.

In the case of *State ex rel. Ekstrom v. The Justice Court of the State of Arizona,* 136 Ariz. 1, 663 P.2d 992, 996 (1983), the state of Arizona ruled that highway checkpoints, for the purpose of enforcing the state's drunk driving laws, were unconstitutional because the record in that case revealed that the intrusion was not minimal, there was not an unsubstantial amount of discretionary law enforcement activity, and the manner in which the roadblocks were operated was "somewhat ir-

regular." The court also noted the absence of highway patrol guidelines and that such roadblocks could be set up at the discretion of a local highway patrolman. Officers were uncertain whether they could simply question vehicles' occupants or could search for evidence. The court also held that it felt there was an adequate method for checking for drunk drivers through observation, and that there was no pressing need for the roadblock device. *Id.*

It would appear safe to conclude from a reading of the above case that Arizona would rule or has ruled that roadblocks are unconstitutional per se in light of the court's finding the lack of pressing need and the confidence in other well-established methods of detecting drunken driving. But *see State v. Superior Court in & for County of Pima,* 143 Ariz. 45, 691 P.2d 1073 (banc 1984), discussed *infra.*

The State of Kansas, in the case of *State v. Deskins,* 234 Kan. 529, 673 P.2d 1174 (1983), held that use of roadblocks was not unconstitutional. The court discussed the protections afforded by the Fourth Amendment and the Kansas Constitution and acknowledged the "balancing test" required. The court noted, in applying the "balancing test", the three-pronged analysis which had been previously announced in *Brown v. Texas,* 443 U.S. 47, 50–51, 99 S.Ct. 2637, 2640–2641, 61 L.Ed.2d 357 (1979), which included:

> '... [A] weighing of the gravity of the public concerns served by the seizure, the degree to which the seizure advances the public interest, and the severity of the interference with individual liberty.'

*State v. Deskins,* 673 P.2d at 1184–85.

The Kansas court then went on to list the following conditions or factors which must be considered in the determination of whether a roadblock meets the balancing test:

> Numerous conditions and factors must be considered in determining whether a DUI roadblock meets the balancing test in favor of the state. Among the factors which should be considered are: (1) The degree of discretion, if any, left to the officer in the field; (2) the location desig-

nated for the roadblock; (3) the time and duration of the roadblock; (4) standards set by superior officers; (5) advance notice to the public at large; (6) advance warning to the individual approaching motorist; (7) maintenance of safety conditions; (8) degree of fear or anxiety generated by the mode of operation; (9) average length of time each motorist is detained; (10) physical factors surrounding the location, type and method of operation; (11) the availability of less intrusive methods for combating the problem; (12) the degree of effectiveness of the procedure; and (13) any other relevant circumstances which might bear upon the test. Not all of the factors need to be favorable to the state but all which are applicable to a given roadblock should be considered. Some, of course, such as unbridled discretion of the officer in the field, would run afoul of *Prouse* regardless of other favorable factors.

*State v. Deskins,* 673 P.2d at 1185.

It is obvious that Kansas upholds the constitutionality of roadblocks if the safeguards prescribed by the Fourth Amendment are met via the balancing test. In the case of *Deskins,* the court concluded that the test was met under the particular facts and circumstances of that case.

The state of Maryland, in the case of *Little v. State,* 300 Md. 485, 479 A.2d 903 (1984), held roadblocks to be constitutional when no Fourth Amendment or statutory violations occurred. Maryland recognizes the compelling public interest in the control of drunken drivers.

In *State v. Golden,* 171 Ga.App. 27, 318 S.E.2d 693 (1984), the state of Georgia upheld roadblocks, observing that in the particulars of that case, the officers, from their observations, had reasonable and articulable grounds to believe that the accused might be intoxicated.

Once again, Arizona considered this issue in *State v. Superior Court in & for County of Pima, supra,* 691 P.2d at 1076, and reflected a change of attitude from the previous ruling in *State ex rel. Ekstrom, supra* in finally recognizing the gravity of public concern over drunken driving.

The state of New York, in *People v. Scott*, 63 N.Y.2d 518, 483 N.Y.S.2d 649, 473 N.E.2d 1 (1984), upheld the constitutionality of roadblocks, noting that the operation was established pursuant to a plan by the county sheriff, which included a prohibition against field sobriety tests unless they observed listed criteria which gave substantial cause to believe a driver was intoxicated. The court also ruled that the temporary nature and shifting of location did not impair the constitutionality of the operation. *Id.* 483 N.Y.S.2d at 653, 473 N.E.2d at 5.

In *State v. Smith*, 674 P.2d 562, 565 (Okla.Crim.App.1984), the state of Oklahoma declared that temporary roadblocks used to stop all traffic at established locations, absent any articulable facts giving rise to a reasonable suspicion for the stop, violated the Fourth Amendment.

In New Hampshire, the court in *State v. Koppel, et al.*, 127 N.H. 286, 499 A.2d 977 (1985) held that the state had failed to show that roadblocks significantly advanced the public interest in a manner which outweighed the public's protection against intrusion and that no less intrusive means were available to achieve the goal of combatting drunken driving.

In *State v. Kirk*, 202 N.J. Super. 28, 493 A.2d 1271, 1275 (1985) a New Jersey court held that roadblocks operated at the "unbridled" discretion of field officers without a plan and supervision, were violative of the public protection. This court ruled the state constitution to be the more proper source from which to decide the issue. In addition, this court held that if certain procedures were adopted and followed, constitutional objections could be overcome. *Id.* 493 A.2d at 1288.

In *Commonwealth v. Tarbert*, 348 Pa. Super. 306, 502 A.2d 221, 222 (1985), the Commonwealth of Pennsylvania applied its own constitution in reversing a conviction for drunken driving. It ruled that police roadblocks which stop all vehicles without probable cause or reasonable suspicion that a crime has or is being committed are unconstitutional. *Id.* 502 A.2d at 226.

The state of Vermont took up the issue in *State v. Martin*, 145 Vt. 562, 496 A.2d 442 (1985) and ruled that the roadblock in question was not violative of the constitutional rights of the accused.

In *State v. Muzik*, 379 N.W.2d 599, 604 (Minn.App.1985), the state of Minnesota held that the "balancing test" was applicable in Minnesota and in this particular case, the state failed to prove that the roadblock operation, and hence the seizure pursuant thereto, were reasonable.

*Webb v. State*, 695 S.W.2d 676, 683 (Tex. Ct.App.1985) was a case in which the court ruled that roadblocks designed to detain all traffic for purposes of screening out intoxicated drivers without specific standards established by superior officers was unreasonable and violative of the Fourth Amendment.

The state of Washington, in *State v. Marchand*, 104 Wash.2d 434, 706 P.2d 225, 228 (1985) ruled that "spot checks" of vehicles were not permissible under *Prouse, supra.*

Nebraska took up the issue in *State v. Crom*, 222 Neb. 273, 383 N.W.2d 461, 463 (1986), and ruled that a driver upon the roadway has an expectation of privacy; and a roadblock which left the officers free to decide when, where, and how to establish/operate the roadblock was an arbitrary invasion and violated the Fourth Amendment.

In *State v. Jones*, 483 So.2d 433, 439 (Fla.1986), Florida held unconstitutional a roadblock which stopped vehicles without any articulable suspicion of illegal activity as being violative of the Fourth Amendment.

What is readily apparent from the foregoing authorities is a varied attempt to weigh and choose between the individual protection afforded by the Fourth Amendment, and, in some cases, even more stringent state constitutional provisions, and the overall public interest of removing or at least detecting drunken drivers upon public roadways.

Before addressing appellant's argument, it is noted that he concludes that certain

statutory provisions under our law also protect him from roadblock operations. These statutes are as follows:

**43.200.  Power of search and seizure limited—instruction of officers.—1.** The members of the patrol shall not have the right or power of search nor shall they have the right or power of seizure except to take from any person under arrest or about to be arrested deadly or dangerous weapons in the possession of such person, and except that the members of the patrol shall have the power of search and seizure on a public highway of this state, or off the public highways of this state as an incident to an arrest made following a hot pursuit from a public highway.  When ordered to any county or municipality in this state by the governor because of civil disorder the members of the patrol during that time may exercise all powers of search and seizure in the same manner and to the same extent as any sheriff in this state except that a member of the patrol shall not apply for or serve search warrants.

2.  The superintendent of the highway patrol shall see that every member of the 'highway patrol is thoroughly instructed in the powers of police officers to arrest for misdemeanors and felonies and to search and seize in order that no person or citizen traveling the highways shall be hindered, stopped, or arrested or his person or property searched or seized without constitutional grounds existing therefor.

**577.020.  Chemical tests for alcohol content of blood—consent implied—administered, when, how.—1.**  Any person who operates a motor vehicle upon the public highways of this state shall be deemed to have given consent to, subject to the provisions of sections 577.020 to 577.041, a chemical test or tests of his breath, blood, saliva or urine for the purpose of determining the alcohol or drug content of his blood if arrested for any offense arising out of acts which the arresting officer had reasonable grounds to believe were committed while the person was driving a motor vehicle while in an intoxicated or drugged condition.  The test shall be administered at the direction of the arresting law enforcement officer whenever the person has been arrested for the offense.

2.  The implied consent to submit to the chemical tests listed in subsection 1 of this section shall be limited to not more than two such tests arising from the same arrest, incident or charge.

3.  Chemical analysis of the person's breath, blood, saliva, or urine to be considered valid under the provisions of sections 577.020 to 577.041 shall be performed according to methods approved by the state division of health by licensed medical personnel or by a person possessing a valid permit issued by the state division of health for this purpose.

4.  The state division of health shall approve satisfactory techniques, devices, equipment, or methods to be considered valid under the provisions of sections 577.020 to 577.041 and shall establish standards to ascertain the qualifications and competence of individuals to conduct analyses and to issue permits which shall be subject to termination or revocation by the state division of health.

5.  The person tested may have a physician, or a qualified technician, chemist, registered nurse, or other qualified person of his own choosing and at his expense administer a test in addition to any administered at the direction of a law enforcement officer.  The failure or inability to obtain an additional test by a person shall not preclude the admission of evidence relating to the test taken at the direction of a law enforcement officer.

6.  Upon the request of the person who is tested, full information concerning the test shall be made available to him.

**577.037.4.  Chemical tests, results admitted into evidence, when, effect of.—**

*   *   *   *   *   *

4.  A chemical analysis of a person's breath, blood, saliva or urine, in order to give rise to the presumption or to have the effect provided for in subsection 1 of this section, shall have been performed

as provided in sections 577.020 to 577.041 and in accordance with methods and standards approved by the state division of health.

**577.039. Arrest without warrant, lawful, when.**—An arrest without a warrant by a law enforcement officer, including a uniformed member of the state highway patrol, for a violation of section 577.010 or 577.012 is lawful whenever the arresting officer has reasonable grounds to believe that the person to be arrested has violated the section, whether or not the violation occurred in the presence of the arresting officer; provided, however, that any such arrest without warrant must be made within one and one-half hours after such claimed violation occurred.

■ This court rejects appellant's argument that the use and deployment of sobriety checkpoints or roadblocks are unconstitutional per se. Since appellant asserts that such procedures are violative of Mo. Const. Article I, § 15, that is the obvious starting point of the discussion of the issue. That section reads:

**Section 15. Unreasonable search and seizure prohibited—contents and basis of warrants**

That the people shall be secure in their persons, papers, homes and effects, from unreasonable searches and seizures; and no warrant to search any place, or seize any person or thing, shall issue without describing the place to be searched, or the person or thing to be seized, as nearly as may be; nor without probable cause, supported by written oath or affirmation.

The foregoing provision of our State Constitution has been "interpreted to provide essentially the same protection found in the fourth amendment to the United States Constitution." *State v. Sweeney,* 701 S.W.2d 420, 425 (Mo. banc 1985). With this ruling by the highest court in our state, it obviously follows that the interpretation given the Fourth Amendment by the United States Supreme Court in *Delaware v. Prouse, supra,* is applicable to our state. Mo. Const. Article I, § 15 is not further restrictive than the Fourth Amendment. Unlike Pennsylvania in the case of *Commonwealth v. Tarbert, supra,* the Constitution of Missouri does not extend the protection against unreasonable search and seizure beyond the scope and breadth of the Fourth Amendment. Simply put, appellant's allegation that roadblocks are unconstitutional per se, as being violative of Mo. Const. Article I, § 15, has no validity.

■ Appellant asserts that roadblocks are a violation of § 43.200. By argument, appellant has superimposed upon this section of our statutes his argument expressed relative to Article I, § 15. Appellant misconstrues § 43.200 and the limitations imposed therein as those limitations relate to the particular facts and circumstances of the instant case. The "search and seizure" at issue in the present case, of course, was the detaining and the subsequent breathalyzer test of appellant. It is to be noted that subsection 1 of § 43.200 authorizes the Missouri Highway Patrol search and seizure powers upon the public highways of this state. The pertinent language reads: "... and except that the members of the patrol shall have the power of search and seizure on a public highway of this state ..." There is no dispute that the roadblock and the arrest of appellant occurred upon a public highway of this state within the meaning of § 43.200.1. Further authority for such action is found in § 43.025, RSMo 1986 in that the Missouri Highway Patrol is to enforce the traffic laws and promote safety upon our highways.

A further misconception by appellant lies in the fact that the "search and seizure" involved herein were upon probable cause when the trooper noticed a strong odor of beer upon appellant's person. In addition, the search and seizure were incidental to the actual arrest of appellant. There is no merit to appellant's claim that the roadblock was in violation of § 43.200.

Appellant's contention that the roadblock violated § 577.020 simply does not apply to the present proceedings. Section 577.020, commonly referred to as the implied consent rule, applies only when an arresting

officer has reasonable grounds to believe a person was operating a motor vehicle while intoxicated or drugged. In other words, a breathalyzer cannot be used to establish probable cause. Probable cause must arise first, then implied consent pursuant to this statute arises and the officer is authorized to administer a breathalyzer test. Any motorist can refuse to take the test, but as the record herein reveals, that is not an issue in the present case. The record clearly shows that the trooper herein had reasonable grounds to believe that appellant was intoxicated by the odor about appellant's person.

Appellant's argument that the roadblock violated § 577.037.4 has even less credibility. This statute provides for the admissibility of chemical tests into evidence. It has no bearing upon the issue of the constitutional validity of roadblocks.

Further, appellant contends that the roadblock violated § 577.039. This particular section provides for the arrest (within a limited time), without a warrant, of any person for violations of § 577.010 or 577.-012, RSMo 1986 in the officer's presence or beyond his presence if in the latter matter, the arrest is made within one and one-half hours of the claimed violation. This statute has nothing to do with the constitutional validity of roadblocks.

At this juncture, it is perhaps best to summarize this court's position on the constitutional issue.

■ Article I, § 15 of the Missouri Constitution is essentially the same as the Fourth Amendment to the United States Constitution. Article I, § 15 imposes no more stringent prohibition than that prescribed by the Fourth Amendment. The ruling by the United States Supreme Court in *Delaware v. Prouse, supra,* is applicable to the present proceedings in that roadblocks are not unconstitutional per se. Appellant's assertions that roadblocks are violative of §§ 43.200, 577.020, 577.037.4 and 577.039 are without merit and these statutes do not impose a further limitation upon the use of roadblocks.

Interception of drunken drivers upon our public roadways is a legitimate public inter-est. Appellant herein does not even question this declaration but merely asserts that roadblocks are an unconstitutional means or method by which to enforce this public interest.

■ The only real question in this case is whether, under the facts and circumstances presented of record, the particular roadblock met constitutional muster due to the way it was conducted.

The record reveals that this particular roadblock was executed according to a plan prepared in advance with field personnel and supervisory personnel. The particular location was selected because previous data compiled revealed three "high counties in the Troop F area." There are thirteen counties of responsibility within the Troop F area. This data included the study of the alcohol related accidents occurring in the thirteen counties. This data base was compiled by the staff of the General Headquarters and then distributed to Troop F. An order authorizing the roadblock was executed from a command officer of Troop F. This order designated specific guidelines, locations, and times to be followed by field personnel. Just prior to the establishment of the roadblock, a meeting was held with field personnel to orient them to their duties and the manner in which the roadblock would be conducted. Each member in the field was given a copy of the order.

The record also reveals that at the roadblock scene, an easily-read sign reading, "Sobriety Checkpoint Ahead" was posted for all oncoming traffic (both directions upon the roadway) to observe. Also, red flares were positioned along the roadway to guide motorists, patrol vehicles were stationed with lights flashing so as to be readily noticeable by motorists, field personnel wore vests with reflective material to identify them, and unless there was cause (determined by an officer's observation of a driver), the delay to each vehicle and its occupants was minimum, or in the words of one witness, "no car [was] unduly detained." The greater number of vehicles were detained less than sixty seconds. As a vehicle was stopped, an officer would ask

for an operator's license and attempt to observe the appearance of the driver. If an officer suspected a driver was intoxicated, that driver was requested to move his vehicle to a nearby parking area, thus not delaying the vehicles still proceeding through the roadblock. If a driver was requested to drive to the parking area, then, and only then, was a field sobriety test given.

The plan and its execution provided that if traffic began to "back up", then vehicles were waved through to alleviate the traffic congestion. In this particular instance, such "back up" occurred three or four times. The "back up" number was four or five vehicles.

It should be noted that all traffic traveling in both directions was subject to being stopped, and there was no random selection of any one vehicle at any given time. Supervisory personnel were on the scene to insure the proper execution of the plan.

The question remains: Was the above action by the Missouri Highway Patrol an intrusion upon the individual rights of the motorists such as to violate their rights as protected by the Fourth Amendment to the United States Constitution, the Constitution of Missouri and/or the statutes of our state?

This court holds that under the particular facts and circumstances of the present case the "intrusion" was minimal. In addition, as the facts reveal, this particular roadblock operation was conducted by a designed plan, executed under supervisory personnel, provided more than ample notice to travelers as to what the operation was and provided a system by which delay to travelers was minimized.

There is no question that the state has a legitimate public interest in the safety upon our roadways. This safety includes the interception and removal of drunk drivers from the roadways. In balancing this legitimate public interest against the right of individuals to be protected from search and seizure without warrant, as is afforded by the Fourth Amendment and our own Constitution, it must be and is hereby concluded that the particular roadblock operation conducted in appellant's case met the requirements of the Fourth Amendment and our own Constitution.

This particular operation did not include either the acts or omissions which had caused other jurisdictions to hold "roadblocks" unconstitutional.

The necessity to remove drunk drivers from our roadways is an ever increasing one and society must continue to combat the problem within constitutional limits. The operation herein is found to have been well within these constitutional safeguards.

Appellant's plea that only a fraction of those vehicles stopped on this particular occasion revealed operators who were intoxicated does not rise to a constitutional level. There is no necessity of numbers to establish the constitutional validity of such operations. There is no magic and certainly no basis for holding roadblocks are unconstitutional simply because a small number of intoxicated drivers were intercepted. Indeed, it takes only one impaired driver to possibly extinguish other lives, cause serious and life-long disability, and destroy property of otherwise innocent travelers upon our roadways.

There is no merit to appellant's assertion that roadblocks are unconstitutional per se in this state. Likewise, there is no merit to appellant's assertion that this particular roadblock violated any constitutional or statutory authority in this state.

The judgment herein is in all respects affirmed.

All concur.