STATE of Missouri, Plaintiff–Appellant,

v.

David Wayne VANACKER, Defendant–Respondent.

No. 15424.

Missouri Court of Appeals, Southern District, Division Two.

Oct. 24, 1988.

William L. Webster, Atty. Gen., Theodore A. Bruce, Timothy W. Anderson, Asst. Attys. Gen., Jefferson City, for plaintiff-appellant.

Stephen P. Carlton, Johnston & Carlton, Carthage, for defendant-respondent.

HOGAN, Judge.

The vehicle in which defendant David Wayne Vanacker was riding as a passenger was stopped at a roadblock in Dade County. In circumstances presently to be noted, a member of the State Highway patrol seized a plastic bag of marihuana, a hash pipe and a package of rolling papers from the defendant's person. Thereafter Vanacker was charged with possession of marihuana in violation of § 195.020.1, RSMo. 1986,[1] and possession of drug paraphernalia in violation of § 195.020.2. The defendant filed a motion to suppress the evidence seized. After a hearing, the trial court sustained the motion. The State appealed pursuant to §§ 547.200.1(3) and 547.-200.3. Upon the record presented, we reverse and remand.

The search and seizure complained of occurred during the operation of a roadblock which had been established on Route "Y" in Dade County. Although the constitutionality of the roadblock is not questioned,[2] we have examined the record and find that the roadblock differs in no material particular from that which was held constitutional in *State v. Welch*, 755 S.W.2d 624 (Mo.App.1988). Further, it has been stated that the law of roadblocks conceptu-

ally lies in the area of stop and frisk rather than automobile search. J. Hall, Search and Seizure § 10:29, p. 337 (1982). For our purposes, we accept that statement as sound.

The defendant was a passenger in an automobile being driven by one Garland Eggerman. One of the two members of the Highway Patrol who were working the roadblock stopped the Eggerman vehicle. Trooper Callaway, who stopped the automobile, talked to Eggerman and suspected Eggerman was intoxicated. Callaway asked Eggerman to step from his vehicle. When Eggerman did so, Trooper Callaway noticed and retrieved narcotics in plain view on the seat of the car. Trooper Dwayne Isringhausen, who was working with Trooper Callaway, saw Callaway "reach down and pick up the narcotics." He then asked the defendant to step out of the car. There was no odor of intoxicants about the defendant's person, but Trooper Isringhausen noticed a lump or bulge in the defendant's "pant" pocket. Isringhausen "patted [the defendant] down." Believing Vanacker was "quite possibly" carrying a weapon, Isringhausen asked him to remove the contents of his pocket. The defendant produced a plastic bag containing marihuana, a hash pipe and a "package of rolling papers." Isringhausen thereupon arrested the defendant.

The court found that the circumstances of the case supported the reasonableness of the roadblock. Nevertheless, the court granted the motion to suppress, stating:

"... It does not appear that the items which the pat-down [sic] indicated are such, as to be readily mistaken for a deadly weapon. And, so, for that reason, the Court is of the opinion that their production was more related to a, perhaps an unconscious, subconscious desire to determine just what it was the rascal

---

1. References to statutes and rules are to RSMo 1986 and V.A.M.R., except where otherwise specifically noted.

2. In his brief, the respondent contents himself with the assertion that "[t]he trial court ruled that the stopping of the defendant was constitutionally permissible therefore the State was not

aggrieved by the trial court's ruling." In the "argument" part of his brief, the respondent maintains that the "State is asking this court to establish guidelines for road block [sic] stops in the State of Missouri which obviously is not the issue on appeal in this case."

was carrying, rather than to establish or to get him to produce what was in fact suspected to be a weapon which could be utilized against the Highway Patrolman.

Quite frankly, if the Highway Patrolman had strong reason to believe that this was in fact a weapon, obviously the first thing he would have done ... would be to have cuffed the Defendant and taken him out himself. I wouldn't let him get a hand anywhere near it, unless I had a gun at the back of his head. And so for that reason I do believe that the production of the particular items in question was unreasonable under the circumstances."

■ The State bears the burden of showing erroneous action on the part of the trial court. *State v. Harris*, 534 S.W.2d 516, 519 (Mo.App.1976). Accordingly, the State argues that because the officer, having lawfully stopped the defendant, and believing the bulge in defendant's pocket to be a weapon, was justified in requiring the defendant to produce the contents of his pocket. *See Terry v. State of Ohio*, 392 U.S. 1, 29–30, 88 S.Ct. 1868, 1884–85, 20 L.Ed.2d 889, 910–11 (1968). In an effort to persuade the trial court that the officer was in fact justified in his actions under *Terry*, the State offered the testimony of the trooper who conducted the search. The trial court agreed with the State that, pursuant to *Terry*, the trooper was justified in conducting the initial frisk. What the trial court did not believe, however, was that "the items which the pat-down [sic] indicated [were] such as to be readily mistaken for a deadly weapon."

■ If one uses a *Terry* approach to determine the ultimate reasonableness of the search in this case, it is undoubtedly material to inquire whether the investigating officer could reasonably have believed the object in the defendant's pocket was a weapon. In *Terry*, the court stressed that the investigating officer "did not place his hands in [the pockets of the petitioner and his two companions] until he ... felt weapons, and then he merely reached for and removed the guns." *Terry v. State of Ohio*, 392 U.S. at 29–30, 88 S.Ct. at 1884,

20 L.Ed.2d at 911. As one learned commentator has put the matter, an important question to be resolved in determining whether an officer has grounds to search after a patdown is "that of what tactile sensations produced by the pat-down will justify a further intrusion into the clothing of the suspect." 3 W. LaFave, Search and Seizure § 9.4(c), p. 521 (1987). Certainly there are cases which would sustain a finding that Trooper Isringhausen's initial patdown did not justify a further search. *See Raleigh v. State*, 404 So.2d 1163 (Fla.App. 1981); 3 W. LaFave, *supra*, at § 9.4(c), p. 523, n. 137.

■ Assuming, nonetheless, that the object discovered in the patdown does not feel like a weapon, this only means that a further search may not be justified under a *Terry* analysis. The feel of the object, together with other suspicious circumstances, may amount to probable cause to believe that the object is contraband or some other item subject to seizure, in which case there may be a further search based upon that probable cause. 3 W. LaFave, *supra*, § 9.4(c), p. 524. A case which bears some analogy to the case at hand is *State v. Ludtke*, 306 N.W.2d 111 (Minn.1981). In *Ludtke*, the initial frisk was held justified; the court further held that intrusion into the defendant's pocket to seize a soft package was justified because the officer had already lawfully determined that another such bag contained marihuana. The officer was, the court held, justified in assuming that the packet he felt also contained drugs. *Id.*, 306 N.W.2d at 113.

■ In our opinion, the trial court carried the *Terry* analysis too far in this case and as a result reached an incorrect conclusion. In general, probable cause to conduct a search and seizure may rest upon evidence which is not admissible in a criminal trial. *State v. Singleton*, 660 S.W.2d 13, 19 (Mo.App.1983). Moreover, the existence of probable cause is a matter of actual fact, and Isringhausen's subjective opinion was not material. *Cf. Klingler v. United States*, 409 F.2d 299, 304 (8th Cir.), *cert. denied*, 396 U.S. 859, 90 S.Ct. 127, 24 L.Ed. 2d 110 (1969); *State v. Abbott*, 571 S.W.2d

809, 815 (Mo.App.1978). Isringhausen knew, as did the other officers working with him, that a gathering or celebration known as the "Friends' Fest" was taking place near the site of the roadblock. Isringhausen knew that in the past, participants in the Friends' Fest had been arrested for " ... DWI, possession of narcotics, possession of illegal weapons, [and] narcotic paraphernalia...."

When Eggerman stepped from his vehicle, Trooper Callaway saw narcotics in the vehicle. Isringhausen saw Trooper Callaway "reach down and pick up the narcotics." Isringhausen then conducted a patdown of the defendant. In the particular circumstances of this case, the discovery of the "lump" in the defendant's pocket gave Isringhausen probable cause to believe that the object in the defendant's pocket was contraband and reason to conduct a further search based on that probable cause. The order of the Associate Division of the Circuit Court of Dade County is reversed and the cause is remanded.

PREWITT, P.J., and FLANIGAN and MAUS, JJ., concur.