

# Missouri Court of Appeals

## Southern District

## Division Two

STATE OF MISSOURI, )
)
    Plaintiff-Respondent, )
)
v. ) No. SD34001
)
STACY BIGGERSTAFF, ) **Filed: Apr. 15, 2016**
)
    Defendant-Appellant. )

### APPEAL FROM THE CIRCUIT COURT OF TANEY COUNTY

Honorable Eric D. Eighmy, Associate Circuit Judge

**<u>AFFIRMED</u>**

In the early afternoon on April 17, 2013, Stacy Biggerstaff ("Defendant") was stopped at a Missouri Highway Patrol ("MHP") checkpoint, along with all other motorists traveling Taney County's Coon Creek Road at that time. Based on evidence acquired during the stop, Defendant was later found guilty of the class C felony of possession of a controlled substance, *see* section 195.202 (Count I), the class A misdemeanor of driving while intoxicated, *see* section 577.010 (Count II), and the unclassified misdemeanor of driving while suspended, *see* section 302.321 (Count III).[1]

---

[1] Unless otherwise indicated, all statutory references are to RSMo 2000. The case was tried to the court without a jury, and after finding Defendant guilty on all counts, the trial court sentenced Defendant to one year in the Taney County jail on Count II, suspended execution of that sentence, and placed Defendant on a two-year period of probation. The trial court suspended the imposition of any sentence on counts I and III, placing Defendant on a two-year term of probation on Count III and a five-year term on Count I. Due to the suspended

1

Defendant's single point on appeal challenges her Count II conviction on the ground that the evidence acquired at the MHP checkpoint violated her right to be free from unlawful search and seizure because: (1) the "checkpoint location was not chosen based on specific data"; (2) "no written procedures were implemented and provided to field personnel"; and (3) "no signs or other warnings were given to drivers about the checkpoint."

Because Defendant has failed to demonstrate that the trial court's ruling was clearly erroneous, we affirm.

## Standard of Review

When reviewing the denial of a motion to suppress, we review the evidence presented at both the motion hearing and the trial, *State v. Goff*, 129 S.W.3d 857, 861-62 (Mo. banc 2004), and we will uphold the trial court's decision unless it is clearly erroneous. *State v. Guinn*, 453 S.W.3d 846, 849 (Mo. App. S.D. 2014). The trial court's ruling must be supported by substantial evidence, and we view all facts and reasonable inferences in the light most favorable to the ruling, disregarding all contrary evidence and inferences. *Id.*

## Analysis

Defendant acknowledges that the United States Supreme Court "has implied that equipment or operator license checkpoints may be constitutional if the checkpoints do not allow the officers to have an unconstrained exercise of discretion. *Delaware v. Prouse*, 440 U.S. 648, 663 (1979)." Defendant and the State both look to *State v. Welch*, 755 S.W.2d 624 (Mo. App. W.D. 1988), for guidelines describing a proper checkpoint. *Welch* involved a roadblock to check drivers' sobriety, *id.* at 625, and it did not establish a rigid formula for conducting all checkpoints. Instead, after engaging in a thorough discussion of law in this

impositions of sentence, no final judgment has been entered on counts I and III. *See State v. Saffaf*, 81 S.W.3d 526, 526-27 (Mo. banc 2002). The trial court also found Defendant guilty of the infraction of failing to wear a seatbelt (Count IV) and imposed a $10.00 fine.

area, including opinions from the United States Supreme Court and other states, and then analyzing the particular facts surrounding the roadblock at issue, it found that "roadblocks are not unconstitutional per se" and that the specific checkpoint before the court passed constitutional muster. *Id.* at 626-33. The court held

> that under the particular facts and circumstances of the present case the "intrusion" was minimal. In addition, as the facts reveal, this particular roadblock operation was conducted by a designed plan, executed under supervisory personnel, provided more than ample notice to travelers as to what the operation was and provided a system by which delay to travelers was minimized.

*Id.* at 633.

Defendant also cites *State v. Canton*, 775 S.W.2d 352, 353, 354 (Mo. App. E.D. 1989), in which a roadblock to check for vehicle defects, driver's licenses, and "possibly for any intoxicated drivers" was found to bear "little or no resemblance to those approved in" *Welch* and two other opinions.[2] The checkpoint in *Canton* was conducted at night, and it was conducted without safety measures for drivers, written procedures or adequate officer training, a sufficient number of officers, evidence of agency authority to conduct the checkpoint, and specific data regarding the location used. *Id.*

The following summary of the evidence concerning the checkpoint in this case is viewed in the light most favorable to the trial court's ruling, and it demonstrates that the checkpoint was similar to *Welch* and distinguishable from *Canton*. The primary purpose of the checkpoint was to enforce traffic safety laws, with a focus on driver qualification and the condition of the motor vehicles' safety equipment. The checkpoint was within the territory of MHP Troop D.

---

[2] *See State v. Vanacker*, 759 S.W.2d 391, 392 (Mo. App. S.D. 1988), and *State v. Payne*, 759 S.W.2d 252, 252-53 (Mo. App. E.D. 1988).

3

A MHP "GENERAL ORDER" and a "SPECIAL ORDER" for Troop D were admitted into evidence. The purpose of the general order was "[t]o provide uniform guidelines relating to the implementation and operation of roadblocks." Neither order provided specific data about the rates of violations of traffic safety laws, but the special order listed approved locations for daytime checkpoints "selected by zone supervisors for the purpose of reducing property damage, injuries, and deaths caused by unqualified drivers and defective equipment on motor vehicles." The special order also set forth "procedures to be followed" for conducting the checkpoint.

The checkpoint location was listed in the special order, and it was being overseen by a MHP corporal acting as an assistant zone supervisor because no zone supervisor was on duty. Zone supervisors were granted the authority to implement enforcement checkpoints at locations listed in the special order. From the locations listed in the special order, the actual choice would then be made based upon where the troopers to be used to man the checkpoint were working at that time. The troopers involved in the checkpoint met together briefly before they began stopping motorists, and they went over how it was to be conducted. The trooper who ultimately arrested Defendant testified that the procedures in the special order were followed regarding the checkpoint, with the exception that "each" trooper involved did not complete a data form following the conclusion of the checkpoint. Instead, the practice had become for each trooper to submit their data to their supervisor, who would then submit the data "for the whole checkpoint."

A minimum of two marked patrol vehicles were set up with their emergency lights activated to alert approaching motorists to the existence of the checkpoint. The officers manning the checkpoint wore their MHP uniforms, plus reflective safety vests, and they were

4

standing in the roadway. The checkpoint was conducted entirely in daylight hours during the afternoon for approximately 60 to 90 minutes, and there were clear sightlines to the checkpoint of 250 to 300 yards in either direction. Every vehicle that approached the checkpoint was stopped, and the motorist was advised of the reason for the checkpoint. Any delay to drivers was minimized by each check consisting of a review of the driver's license plus one piece of vehicle safety equipment (such as a turn signal or brake lights) in a process that could take as little as thirty seconds.[3]

When Defendant drove up to the checkpoint, she was not wearing her seatbelt, and she told the trooper that she did not have her driver's license. Defendant was directed to the side road, where further investigation revealed that her license had been suspended. Suspecting intoxication, a trooper had Defendant take field sobriety tests, and he arrested Defendant for driving while intoxicated at the conclusion of those tests.

Much of this evidence refutes Defendant's claims that "no written procedures were implemented and provided to field personnel, and no signs or other warnings were given to drivers about the checkpoint." While no evidence was presented in this case of the specific data used to determine the checkpoint locations listed in the special order, **Welch** does not *require* such evidence, and the checkpoint in **Canton** was not found to be constitutionally deficient *solely* because of the lack of such evidence. *See* 755 S.W.2d at 632-33[4] and 775 S.W.2d at 354. Defendant has failed to provide us with any argument or authority why this particular matter left the officers with "unconstrained . . . discretion" and should trump all other considerations in assessing the constitutionality of a traffic safety checkpoint. *See*

---

[3] If any problems were found, the vehicle involved was directed to a disused side road for additional investigation to ensure that other traffic on the main road would not be unnecessarily impeded.

[4] "The particular location [in **Welch**] was selected because previous data compiled revealed three 'high counties in the Troop F area.'. . . [and] included a study of alcohol related accidents occurring in the thirteen counties." 755 S.W.2d at 632.

*Prouse*, 440 U.S. at 663. To craft such an argument on Defendant's behalf would impermissibly place us in the role Defendant's advocate. *City of Lee's Summit v. Cook*, 337 S.W.3d 757, 758 (Mo. App. W.D. 2011).

Because Defendant has failed to demonstrate that the trial court clearly erred in denying Defendant's motion to suppress the evidence acquired during the checkpoint, her point is denied, and her conviction on Count II is affirmed.

DON E. BURRELL, P.J. – OPINION AUTHOR

GARY W. LYNCH, J. – CONCURS

WILLIAM W. FRANCIS, JR., J. – CONCURS