**STATE of Missouri, Respondent,**

v.

**Edith Lynn SMITH, Appellant.**

No. 52148.

Missouri Court of Appeals, Eastern District, Division Four.

June 16, 1987.

Motion for Rehearing and/or Transfer Denied July 15, 1987.

Application to Transfer Denied Sept. 15, 1987.

Bernard P. McDonnell, Clayton, for appellant.

William L. Webster, Atty. Gen., Elizabeth A. Levin, Asst. Atty. Gen., Jefferson City, for respondent.

GARY M. GAERTNER, Presiding Judge.

This is an appeal from a jury conviction for second degree murder and armed criminal action, §§ 565.021.1 and 571.015, RSMo 1986, for which appellant, Edith Lynn Smith, was sentenced to concurrent terms of imprisonment of twenty-five and fifteen years, respectively. Appellant raises seven points on appeal. She claims error in that the trial court: (1) refused to permit her to waive a jury trial; (2) allowed the State to file a request for a second psychiatric examination out of time; (3) admitted into evidence photographs of the victim's body; (4) admitted into evidence appellant's statement to police and a gun seized in her apartment; (5) denied appellant's motion for judgment of acquittal; (6) denied her motion for a new trial upon allegations of juror misconduct; and (7) was without jurisdiction at the time it adopted its findings of fact and conclusions of law. Affirmed.

The sufficiency of the evidence is in dispute. Upon review, we view the evidence and all reasonable inferences therefrom in the light most favorable to the verdict. *State v. Barrett,* 710 S.W.2d 489, 491 (Mo. App., E.D.1986).

The facts reveal that appellant and the victim, John Lee Frost, had been involved in an intimate relationship for approximately 13 months at the time of the offense. On the evening of June 4, 1985, Frost came to appellant's home and took a bath at appellant's request. According to witness Zerlene Woods, a guest in the apartment that evening, appellant told her, "I am going to get rid of him." Woods and appellant's other visitors left the premises. Later that evening, the police were dispatched to appellant's home, were admitted by appellant and found Frost's nude body laying on the floor of the entrance hall. Frost had sustained gunshot wounds in his left hand, his left wrist, and his interior left chest as well as three stab wounds which penetrated the wall of his chest. There was a bullet hole in the bathroom door as well as blood on the bathroom walls. The police recovered a gun belonging to appellant from under the mattress in the bedroom. Tests indicated that the three bullets in Frost's body were from the gun.

Appellant waived her *Miranda* rights and initially told police that Frost had been murdered by an unknown black male drug dealer. She was confronted with the information that her uncle, John Edward Thompson, had phoned the police to report that appellant had called him to say that she had shot someone. Appellant thereafter confessed to shooting Frost. Appellant also made a taped confession of the shooting. Appellant presented evidence that she suffered from a mental disease at the time of the offense and that she did not intend to kill Frost, but only wanted to frighten him away because she feared imminent physical and sexual abuse. She denied stabbing him and claimed no knowledge of how the stab wounds occurred. During rebuttal, the State presented the testimony of a psychiatrist who gave his opinion that appellant was not suffering from a mental disease or defect at the time of the offense.

In appellant's first point, she claims the trial court erred in refusing to allow her to waive a jury trial. Rule 27.01 provides that a defendant may, with assent of court, waive a trial by jury. However, an accused has no absolute right to a bench trial. *Polys v. State,* 724 S.W.2d 265, 267 (Mo.App., E.D.1987). Appellant alleges that her attempt to waive her right to a jury trial was prompted by anticipated racial prejudice, the presentation of complex psychiatric and medical testimony and the violent nature of the offense. The allegations of racial prejudice were based on a post-trial juror affidavit which was found to be unpersuasive. Where the court fails to assent and where appellant's allegations of prejudicial conditions lack specificity, the

trial court cannot be said to have abused its discretion in refusing appellant's request to waive a jury trial. *State v. Taylor*, 391 S.W.2d 835, 836 (Mo.1965). Point denied.

■ In appellant's second point, she contends the trial court erred in allowing the State to file an untimely request for a second psychiatric examination. According to § 552.020.6, RSMo 1986, both defendant and the State are entitled to an order for another psychological examination when the request is filed within 10 days of the filing of the prior examination's report. The trial court has broad discretion in granting or denying an untimely motion. *State v. Gilmore*, 681 S.W.2d 934, 940 (Mo. banc 1984).

■ In the instant case, the initial psychiatric report, dated December 11, 1985, was received by the prosecutor on December 22, 1985. On December 23, 1985, the prosecutor filed a motion to file untimely objections to the report, since the report had not reached him within the requisite statutory period. The court granted the State's motion and ordered a second examination after finding good cause shown for the State's failure to timely object. We hold that the trial court did not abuse its discretion. This point is denied.

■ Appellant's third point claims trial court error in admitting two color photographs of Frost's body. The trial court has broad discretion in admitting photographs. *State v. Guinan*, 665 S.W.2d 325, 331 (Mo. banc), *cert. denied*, 469 U.S. 873, 105 S.Ct. 227, 83 L.Ed.2d 156 (1984). In addition, photographs are admissible if they accurately depict the scene and tend to prove any elements of the charged offense, including issues of "identity, condition and location of the body, nature and location of wounds, and the cause of death." *State v. Evans*, 639 S.W.2d 820, 822 (Mo.1982).

■ The evidence indicated that the photographs were relevant to show the location and position of Frost's body and that he was shot while in the bathroom. The photographs also showed that the stab wounds were fresh. We note that the trial court exercised its discretion by excluding ten similar photographs. However, it found the two at issue to be relevant and we agree. Finding no abuse of discretion, this point is denied.

Appellant's fourth point is that the trial court erred in admitting appellant's confession and the gun seized from her apartment. Appellant claims that her confession was involuntary due to her mental illness and the duration of her custody (6½ hours). She also claims the gun should have been suppressed because it was seized without a warrant and was neither within plain view nor discovered subject to exigent circumstances.

The record shows that appellant was taken to the police station, placed under arrest as a murder suspect, and read her *Miranda* rights. As noted earlier, she thereafter waived her *Miranda* rights and admitted shooting Frost with a gun which she had placed under her mattress. Later that evening, appellant again waived her *Miranda* rights and gave a taped confession. The evidence indicates that despite appellant's alleged mental disorder and the length of her custody, there are no indications that the police coerced appellant into making a confession. Police officers testified that appellant was very cooperative at the murder scene as well as at the time she gave the confessions. They further testified that although appellant was in custody for 6½ hours, she was not interrogated continuously.

■ The burden of proving the voluntariness of a confession is on the State and requires a preponderance of the evidence. *Lego v. Twomey*, 404 U.S. 477, 489, 92 S.Ct. 619, 626, 30 L.Ed.2d 618 (1972); *State v. Olds*, 569 S.W.2d 745, 751 (Mo. banc 1978). Voluntariness is determined by examining the totality of the circumstances to discover whether a defendant was "deprived of a free choice to admit, to deny, or to refuse to answer, and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *State v. Lytle*, 715 S.W.2d 910, 915 (Mo. banc 1986); *see also: Colorado v. Connelly*, — U.S. —, 107 S.Ct. 515, 522, 93 L.Ed.2d 473 (1986). The

totality of the circumstances indicate that appellant was not subject to police coercion, the confession was voluntary, and it was properly admitted into evidence.

 Turning to appellant's assertions about the recovered gun, we hold that under the "inevitable discovery doctrine," [1] the revolver would have been discovered through lawful means, either through a search warrant issued after appellant's confession in which she indicated the location of the gun or through her consent. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984); *State v. Butler,* 676 S.W.2d 809, 812–13 (Mo. banc 1984). We note that the trial court suppressed other physical evidence found by the officers in the apartment without a valid search warrant and without appellant's consent. The gun was properly admissible. This point is denied.

In her fifth point, appellant argues that the evidence was insufficient for a jury to reach a verdict of guilty beyond a reasonable doubt in light of her defenses of self-defense and mental disease and defect. In order to support a claim of self-defense, deadly force may be used only when there is "(1) an absence of aggression or provocation on the part of the defender, (2) a real or apparently real necessity for the defender to kill in order to save himself from an immediate danger of serious bodily injury or death, (3) a reasonable cause for the defender's belief in such necessity, and (4) an attempt by the defender to do all within his power consistent with his personal safety to avoid the danger and the need to take a life." *State v. Chambers,* 671 S.W.2d 781, 783 (Mo. banc 1984); *State v. Hajek,* 716 S.W.2d 481, 483 (Mo.App., E.D.1986).

 The evidence was that appellant had previously initiated abusive confrontations between herself and Frost, she had told Zerlene Woods that she was going to "get rid of [Frost]", and Frost was in the bathroom at the time he was shot. Moreover, appellant admitted that while she feared Frost's imminent abuse, she stayed in the bedroom watching television instead of trying to leave the apartment. Jurors are entitled to accept or reject any part of appellant's admissions or testimony and the jury is not bound by a self-defense claim. *State v. Pinkus,* 550 S.W.2d 829, 838 (Mo.App., S.D.1977). There was sufficient evidence that appellant did not act in self-defense.

 Appellant further contends in this point that there was insufficient evidence for the jury to reach a guilty verdict because she presented psychiatric testimony of her mental disease or defect at the time of the offense. The State rebutted appellant's position with psychiatric testimony that she was not suffering from a mental disease or defect at the time of the offense. Pursuant to § 552.030.6, RSMo 1986, the issue of whether a person is suffering from a mental disease or defect is one for the trier of fact. The trial court did not err in denying appellant's motion for a judgment of acquittal where the evidence was sufficient to overcome appellant's claim of self-defense and where the issue of appellant's mental disease or defect was properly left for the jury's resolution. This point is denied.

In the sixth point, appellant alleges trial court error in refusing to order a new trial based on juror misconduct. Five days after the verdict was returned, Juror Beulah Barnett contacted defense counsel and alleged several instances of juror misconduct. Appellant thereafter filed Ms. Barnett's affidavit which stated Ms. Barnett's belief that the verdict was motivated by racial prejudice toward appellant, that more than one juror discussed the case with family members and friends during the trial, that newspapers were in the jury room during the trial, that at least four jurors stated they could not follow the law in regard to the defense of mental disease, that some jurors had determined the outcome prior to hearing all the evidence, and

---

**1.** If the prosecution can establish by a preponderance of the evidence that the information inevitably would have been discovered by lawful means, then the deterrence rationale has so little basis that the evidence should be received. *Nix v. Williams,* 467 U.S. 431, 104 S.Ct. 2501, 2509, 81 L.Ed.2d 377 (1984).

that Ms. Barnett was intimidated into casting a guilty vote because she feared other jurors.

 Ms. Barnett appeared at the hearing for new trial and testified as to her allegations. The trial court determined that Ms. Barnett's affidavit and testimony failed to show the concealed bias of any juror, *State v. Potter*, 711 S.W.2d 539, 541 (Mo.App., E.D.1986), that no evidence existed of any juror separation during deliberations, *State v. Babb*, 680 S.W.2d 150, 152 (Mo. banc 1984), and that the evidence did not show juror misconduct regarding private communications, *State v. Quinn*, 405 S.W.2d 895, 896 (Mo.1966), or newspapers, *State v. Rojano*, 519 S.W.2d 42, 44 (Mo. App., E.D.1975). In essence, Ms. Barnett's allegations were either unsupported, insufficient or based on her subjective beliefs. The trial court further found that Ms. Barnett's allegations constituted an improper attempt to impeach the verdict. *State v. Jones*, 661 S.W.2d 814, 816 (Mo.App., E.D. 1983). Upon careful review of the allegations made, we find no error in the denial of the motion for new trial based on juror misconduct.

 In appellant's final point, she argues that the trial court lacked jurisdiction to enter its order of September 11, 1986 because appellant filed her notice of appeal on September 8, 1986. The record shows that on August 29, 1986, the trial court heard appellant's motion for new trial and, prior to entering its final judgment and sentence on that date, orally noted, "I am going to adopt the State's findings of fact and conclusions of law in its entirety." The oral adoption was incorporated into the legal file on the court's motion of September 11, 1986. We do not agree with appellant that the trial court was without jurisdiction to adopt its findings and conclusions on September 11, 1986. Rule 29.12(b). Moreover, appellant's substantial rights were not affected because on August 29, 1986, the court orally adopted the findings and conclusions before sentencing and denied appellant's motion for a new trial on the issue of juror misconduct, which was prior to appellant's filing of her notice of

appeal. The record supports the court's ruling. Point denied.

The judgment of the trial court is affirmed.

SIMON and STEPHAN, JJ., concur.