**STATE of Missouri, Respondent,**

v.

**Sherman CRENSHAW, Appellant.**

No. ED 75466.

Missouri Court of Appeals, Eastern District, Division Four.

Feb. 1, 2000.

Motion for Rehearing and/or Transfer to Supreme Court Denied March 20, 2000.

Application for Transfer Denied April 25, 2000.

Dave Hemingway, Asst. Sp. Public Defender, St. Louis, for appellant.

Jeremiah W. (Jay) Nixon, Atty. Gen., Susan K. Glass, Asst. Atty. Gen., Jefferson City, for respondent.

KAROHL, Judge.

Defendant, Sherman Crenshaw, appeals after conviction and sentence to serve fifteen years as a prior and persistent offender on a charge of robbery in the first degree, in violation of section 569.020 RSMo 1994. Defendant seeks a new trial based on the trial court's denial of his request to instruct the jury on the defense of duress. We reverse and remand.

There was evidence to support finding the following facts. On November 7, 1997 Denise M. Lehmuth (Lehmuth) drove to the 6100 block of Hancock where she picked up her friend, Allie Ellis (Ellis), to drive him to the liquor store a few blocks away. As he entered Lehmuth's car, defendant and Ronald Williams, Jr. (Williams) also got in the car. She assumed defendant and Williams were Ellis' friends.

After they went to the liquor store, Lehmuth took Ellis to his home. She asked the other two if they were going with Ellis, but they indicated they were going back to Hancock. Defendant sat in the back seat and Williams rode in the front passenger seat. Lehmuth testified that on the way back to Hancock, Williams said "[t]ake us to University City," but she refused. When she tried to turn onto Hancock, Williams grabbed the wheel to keep her from turning. She then proceeded to University City. On the way, she asked the two men their names. She testified that defendant said his name was "Antwoin." He asked to use her cell phone and she permitted him to use it on the way to University City.

She took them to a house in University City and both men went inside. Lehmuth stayed in her car until the men returned about five minutes later. Defendant got into the front passenger seat and Williams sat in the back seat. She drove them back to Hancock and parked so they could get out of the car. She testified that instead of getting out, Williams held a gun to her head and demanded her belongings. She turned toward the back seat and saw the gun. Williams told her not to look at him and hit her in the head to push her back around. She testified that the gun appeared to be real, further stating that she had seen a .22 caliber handgun before. During this time, defendant did nothing and said nothing.

As she removed her jewelry, Williams nervously pointed the gun at defendant and demanded that he "get [her] stuff together." She testified that Williams waved the gun at defendant for about three seconds before placing it back against her neck. She testified that she did not think Williams was going to shoot defendant. She further testified that defendant did not move or say anything, but held his hands up to receive her jewelry. When a woman walked out of a nearby store, Williams placed his hands over Lehmuth's mouth in fear she would scream for help. After she gave up her jewelry, Williams demanded her coat and pulled it off of her. He also demanded her cell phone. She testified that she could not recall if defendant or Williams took the cell phone from her hands. She further testified Williams did not demand defendant exit the car, although both men got out of her car and started running, with defendant following Williams. The police later found a pellet gun, which Lehmuth identified as the weapon Williams used during the robbery. A policeman testified that the weapon was a target pistol that was almost an exact replica of a .22 caliber pistol.

At trial, Lehmuth testified that defendant made no threatening gesture toward her and she simply placed her jewelry in his hand. She also acknowledged the possibility that after the incident, she told a woman who also knew the defendant that he took no action until Williams pointed the gun at him. At the instruction conference, defense counsel requested the court instruct the jury on the defense of duress pursuant to MAI–CR 3d 310.24. The court denied the instruction stating that "viewing the evidence as a whole, the Court feels that there is not substantial evidence for the giving of this instruction."

■ In his sole point on appeal, defendant argues the trial court erred in denying his request to instruct the jury on the defense of duress where there was sufficient substantial evidence to support

giving the instruction. Specifically, he submits that he "made no threatening remarks or actions as he rode in her car, and did not participate in the robbery until Ronald Williams pointed his gun at him and ordered him to collect her belongings." We review the evidence in the light most favorable to the defendant. *State v. Edwards,* 980 S.W.2d 75, 76 (Mo. App. E.D.1998). A defendant is entitled to an instruction on any theory of his case that the evidence tends to establish. *State v. Hopson,* 891 S.W.2d 851, 852 (Mo.App. E.D.1995).

The state contends there was "no substantial evidence to support the giving of such instruction in that appellant presented no evidence to establish that he was coerced into committing the robbery by the use or threatened imminent use upon him of unlawful physical force." The common law of duress, which was codified by statute, effective January 1, 1979, provides:

> It is an affirmative defense that the defendant engaged in the conduct charged to constitute an offense because he was coerced to do so, by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist.

Section 562.071.1 RSMo 1994. However, the defense of duress is not available "[a]s to any offense when the defendant recklessly places himself in a situation in which it is probable that he will be subjected to the force or threatened force described in subsection 1." Section 562.071.2(2) RSMo 1994.

Our Supreme Court clarified the "elements and perimeters" of the common law defense of duress:

> [T]o constitute a defense to a criminal charge, the coercion must be present, imminent, and impending and of such a nature as to induce a well grounded apprehension of death or serious bodily

injury if the act is not done. Threat of future injury is not enough. Nor can one who has a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury invoke the doctrine as an excuse.

*State v. Rumble*, 680 S.W.2d 939, 942 (Mo. banc 1984) *quoting State v. St. Clair*, 262 S.W.2d 25, 27–28 (Mo.1953). In *St. Clair*, the court held that duress was a submissible issue where the robbery was committed by a defendant under the "immediate surveillance" of another man armed with a shotgun. *St. Clair*, 262 S.W.2d at 28. Here, the evidence supports finding a similar situation.

Lehmuth testified that defendant did not move or say anything from the beginning of the robbery until Williams "nervously" pointed the gun at him and demanded that he "get [her] stuff together." She testified that Williams held the gun on defendant for about three seconds. A policeman testified that the weapon used was a target pistol that was almost an exact replica of a .22 caliber pistol.

The state argues "no evidence" was presented at trial to support the defense of duress. They contend prior to the robbery, as Lehmuth took the men to University City, defendant gave her a false name. They submit that although Lehmuth testified Williams held the gun on defendant, he did so "in a nervous, rather than threatening, manner." They also contend that defendant never questioned Williams about what he was doing, and he never protested. Finally, they submit both men jumped out of the car simultaneously and started running. The state concludes, "this evidence established that the appellant was a knowing and willing participant in the robbery."

■ Defendant is entitled to the instruction if there is substantial evidence that at the time of the robbery, he was coerced "by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist." Section 562.071.1 RSMo 1994. Giving a false name before the robbery does not exclude a finding that defendant acted under duress. Moreover, section 562.071 does not mandate defendant question or protest the aggressor. Further, the state is off-base when claiming defendant offered no evidence where the state's own evidence supports a finding of duress. Finally, Lehmuth's testimony that Williams "nervously" held the gun on defendant and she did not think he would shoot defendant, does not make the threat of imminent use of the gun any less substantial.

If the duress instruction had been given and the jury believed the evidence, it would have supported a finding that defendant committed the robbery because of a present and legitimate fear of impending death or serious bodily injury at the hands of Williams. *See St. Clair*, 262 S.W.2d at 28. Furthermore, if believed by the jury, Lehmuth's testimony that Williams held a gun on defendant during the robbery would support a finding that he did not have reasonable opportunity to avoid committing the robbery without immediate exposure to death or serious bodily injury. *Id.* The trial court erred in refusing to instruct the jury on the defense of duress.

We reverse and remand for a new trial.

WILLIAM H. CRANDALL, Jr., P.J. and MARY K. HOFF, J. concur.