

# Missouri Court of Appeals
## Southern District
### Division Two

STATE OF MISSOURI,                      )
                                        )
    Plaintiff-Respondent,          )
                                        )
vs.                                     )    No. SD33028
                                        )
ANGELA MEGAN GUINN,                     )    Filed December 4, 2014
                                        )
    Defendant-Appellant.           )

### APPEAL FROM THE CIRCUIT COURT OF CRAWFORD COUNTY

Honorable Sidney T. Pearson III, Circuit Judge

AFFIRMED

Angela Megan Guinn ("Defendant") appeals her conviction for attempt to manufacture a controlled substance, *see* section 195.211.[1] Defendant claims that the trial court erred by not granting her motion to suppress, by admitting retail records of her purchases of pseudoephedrine (cold medicines often used in the manufacture of methamphetamine), and by rejecting her proposed duress jury instruction. Finding no merit in Defendant's claims, we affirm.

### Factual and Procedural Background

A jury found Defendant guilty of attempt to manufacture a controlled substance, and the trial court sentenced her to five years' imprisonment but suspended execution of the sentence and

---

[1] Statutory references for section 195.211 are to RSMo Cum.Supp. 2012.

placed her on probation for five years. The following evidence was adduced at the suppression hearing and trial.[2]

On December 11, 2012, as part of a "warrant round up," Missouri State Highway Patrol Trooper Joshua McDonald and Rolla Police Officer Jason Campbell approached the residence of Defendant and her boyfriend, Justin Chandler. Trooper McDonald knocked on the front door, and Defendant answered. Trooper McDonald explained that he was there because Defendant and Chandler had outstanding warrants for their arrest. Trooper McDonald asked if he could step inside; Defendant agreed, and Trooper McDonald entered the residence. Chandler joined them in the living room. Officer Campbell asked for permission to search the residence approximately five to ten minutes later. Chandler gave his consent. Lake Area Narcotics Enforcement Task Force Officer Parish arrived and also asked both Chandler and Defendant for consent to search the residence. Both agreed. The officers then searched the residence while Defendant and Chandler were seated in the living room making arrangements for the care of their pets. Defendant was not placed in handcuffs or told to stay in any particular area. Upon searching the residence, Officer Parish found extensive indications of the manufacture of methamphetamine, including pseudoephedrine tablets in Defendant's purse.

Defendant's motion to suppress the items found in the search of Defendant's residence was denied. Defendant also made a motion *in limine* asking the trial court to preclude the State from using receipts for the purchase of pseudoephedrine as evidence on the basis that they were business records of another crime and violated the Confrontation Clause. The trial court ruled that the evidence was admissible because it was evidence of a continuing course of conduct in commission of the crime for which Defendant was charged.

---

[2] The evidence is set forth in the light most favorable to the State. *State v. Norfolk*, 366 S.W.3d 528, 531 (Mo. banc 2012).

Based on her testimony and her picture taken on the day she was taken into custody, Defendant proffered to the trial court a duress jury instruction (MAI-CR 310.24). The trial court rejected that instruction.

## Discussion

On appeal, Defendant claims that the trial court erred by denying the motion to suppress items obtained in the search of Defendant's residence, by admitting the records of pseudoephedrine sales, and by rejecting a jury instruction on duress.

### *Denial of Motion to Suppress was not Erroneous*[3]

In her first point, Defendant contends that the trial court erred by denying Defendant's Motion to Suppress because there was no consent for the officers to enter the residence and because the arrest warrant for Defendant was not admitted into evidence during the suppression hearing.

"A trial court's ruling on a motion to suppress will be reversed on appeal only if it is clearly erroneous." **State v. Sund**, 215 S.W.3d 719, 723 (Mo. banc 2007). A ruling is clearly erroneous "if we are left with a definite and firm impression that a mistake has been made." **State v. Mathis**, 204 S.W.3d 247, 257 (Mo.App. 2006). "In reviewing a trial court's ruling on a motion to suppress, there must be substantial evidence to support the ruling. The facts and reasonable inferences from such facts are considered favorably to the trial court's ruling and contrary evidence and inferences are disregarded." **Norfolk**, 366 S.W.3d at 531. This Court considers the evidence presented at both the suppression hearing and at trial to determine whether sufficient evidence exists in the record to support the trial court's decision to deny a motion to suppress. **State v. Lovelady**, 432 S.W.3d 187, 190 (Mo. banc 2014).

---

[3] "Where, as here, a criminal defendant's pretrial motion to suppress evidence is overruled, and the defendant objects to the admission of the evidence at trial, we will review the denial of the motion." **State v. Rowe**, 67 S.W.3d 649, 654 (Mo.App. 2002) (citing **State v. Williams**, 9 S.W.3d 3, 11 (Mo.App.1999)).

3

Other than conclusory allegations that no consent was given to enter the residence, Defendant does not specifically explain in what manner she contends the search was not consensual. Defendant does not argue that consent was involuntarily given or given without authority. Defendant extensively references *Florida v. Jardines*, ___ U.S. ___, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013), seemingly for the inference that Trooper McDonald improperly stepped inside the entryway of the residence before consent was given to search the entire residence based upon the officer's belief that the arrest warrant allowed him entry into the home.

In *Jardines*, police brought their canine unit to an individual's home and the canine, trained to alert to the smell of certain narcotics, responded strongly to the front porch by energetically exploring the area, bracketing back and forth, and spinning around in circles. 133 S.Ct. at 1413. The dog's response formed the basis for a search warrant. *Id.* The Supreme Court of the United States held that "the government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment" in part because there is no customary invitation for a "visitor [to explore] the front path with a metal detector[] or march[] his bloodhound into the garden before saying hello and asking permission[.]" *Id.* at 1416-18. In contrast, the Court noted that finding "a visitor knocking is routine (even if sometimes unwelcome)." *Id.* at 1416.

*Jardines* is inapplicable to this case because Defendant does not contend that any officer engaged in any type of illegal search before knocking on her door and asking permission to enter. Moreover, Defendant's underlying premise that no consent was given to enter the home has no factual basis in the record. Trooper McDonald testified that he knocked on the door, asked to enter the home, and consent for such entry was given. Then later, two other officers asked for consent to search the residence, and consent was given twice by Chandler and once by

4

Defendant. Finally, nothing in the record suggests that law enforcement officers discovered any of the evidence used at trial when they were in a place that they had not been given consent to be.

Defendant further contends that the denial of her motion to suppress is clearly erroneous because the State failed to introduce the arrest warrant for Defendant, citing in support *State v. Ingram*, 341 S.W.3d 800 (Mo.App. 2011). In *Ingram*, the state failed to introduce the search warrant, the application, and the supporting affidavits. *Id.* at 804. Without these documents, the *Ingram* court was unable to determine whether there was probable cause for the search warrant and concluded, therefore, the trial court erroneously denied the defendant's motion to suppress physical evidence. *Id.*

Defendant's reliance on *Ingram* is misplaced because the holding there regarding the necessity of introducing the *search* warrant has no application to the *arrest* warrant here. The validity of Defendant's seizure in accordance with the arrest warrant is not at issue, and the validity of the search of Defendant's residence was not based upon any legal authority granted by the arrest warrant. Rather, the validity of the search in this case is based on consent.

> As a general rule, searches conducted without a search warrant are unreasonable and violate a defendant's Fourth Amendment rights. However, there are exceptions to this general rule, including the consensual search exception. A search conducted pursuant to a valid consent is constitutionally permitted. To be valid, consent must be given by someone with authority to do so and must be voluntary.

*Mathis*, 204 S.W.3d at 258.

Accordingly, we are not left with a definite and firm impression that a mistake has been made. *Id.* The trial court's denial of Defendant's motion to suppress is not clearly erroneous. Defendant's first point is denied.

5

*Admission of Records of Pseudoephedrine Sales was not Erroneous*

Defendant contends in her second point that the trial court erred in admitting records of

Defendant's purchases of pseudoephedrine, in violation of Defendant's Sixth Amendment rights

to a fair trial and to confront her accusers.[4]

> A trial court has broad discretion to admit or exclude evidence at trial.
> This standard of review compels the reversal of a trial court's ruling on the
> admission of evidence only if the court has clearly abused its discretion. [T]hat
> discretion is abused when a ruling is clearly against the logic of the circumstances
> and is so unreasonable as to indicate a lack of careful consideration. Additionally,
> on direct appeal, this Court reviews the trial court for prejudice, not mere error,
> and will reverse only if the error was so prejudicial that it deprived the defendant
> of a fair trial. Trial court error is not prejudicial unless there is a reasonable
> probability that the trial court's error affected the outcome of the trial.

*State v. Forrest*, 183 S.W.3d 218, 223–24 (Mo. banc 2006) (internal citations and quotation

marks omitted). The Confrontation Clause states, "In all criminal prosecutions, the accused shall

enjoy the right . . . to be confronted with the witnesses against him." U.S. CONST. amend. VI. In

*Crawford v. Washington*, 541 U.S. 36, 124 S.Ct. 1354, 158 L.Ed.2d 177 (2004), the Supreme

Court of the United States held that the Confrontation Clause demands that all testimonial

evidence be excluded unless the declarant is unavailable to testify and the defendant had a prior

opportunity for cross-examination. 541 U.S. at 68, 124 S.Ct. 1374. *See also* ***State v. March***, 216

S.W.3d 663, 665 (Mo. banc 2007).

Defendant argues that retail records of pseudoephedrine purchases are testimonial

because Missouri retailers must produce these records in anticipation of their use in future

---

[4] In her argument under this point, Defendant also contends that this evidence is inadmissible because it is evidence of a prior bad act, and its probative value is substantially outweighed by the risk of prejudicial impact on the jury. This alternative legal basis is not set forth in Defendant's point relied on. This claim is therefore not preserved for our review. Rule 84.04(e) ("The argument shall be limited to those errors included in the 'Points Relied On.'") as made applicable to appeals of criminal matters by Rule 30.06(c); ***State v. Morrow***, 541 S.W.2d 738, 740 (Mo.App. 1976) (issues developed for the first time in the argument section different from those in the points relied on preserve nothing on appeal).

All rule references are to Missouri Court Rules (2014).

prosecutions. In ***State v. Cady***, 425 S.W.3d 234, 246 (Mo.App. 2014), this Court held that records of pseudoephedrine purchases kept in a manner as required by law are not testimonial because the primary purpose in statutorily mandating that those records be kept and reported is to prevent people from purchasing pseudoephedrine to manufacture methamphetamine. Their later use in a criminal prosecution is only secondary to that primary purpose. ***Id.*** at 246.

Defendant claims that ***Cady*** is distinguishable because the "records introduced were not government records maintained pursuant to statute, but were the records of several different business [sic] with no records custodian or other knowledgeable source able to lay the foundation as to how the information was gathered[.]" In ***Cady***, the records were specifically identified at trial as an "NPLEx printout record[] which details the pseudoephedrine purchases of [Defendant] from August through December 2010." ***Id.*** at 245. Although the pseudoephedrine purchase records offered in this case were the sellers' business records and not an NPLEx printout record of those purchases as reported by the sellers to NPLEx, we see no factual basis from which to distinguish the contents. As explained in ***Cady***, such records are required to be made, kept and reported by sellers of pseudoephedrine in accordance with the mandates of sections 195.017 and 195.417 as implemented by 19 C.S.R. 30–1.074.[5] ***Id.*** at 244. Defendant specifically stated at pre-trial that she had no foundational objection to the records. Therefore, her attempt to distinguish ***Cady*** on appeal based on the lack of testimony as to how the information was gathered is meritless because that foundational objection was waived.

The records of Defendant's pseudoephedrine purchases did not violate Defendant's right of confrontation because those records were not testimonial in nature. ***Id.*** at 246. Therefore,

---

[5] Statutory references for section 195.017 are to RSMo Cum.Supp. 2011. References to section 195.417 are to RSMo Cum.Supp. 2008.

their admission by the trial court was not "against the logic of the circumstances" and was not an abuse of discretion. *Forrest*, 183 S.W.3d at 223. Defendant's second point is denied.

### Trial Court Did Not Err in Rejecting Duress Jury Instruction

In her final point, Defendant claims that the trial court erred in rejecting her duress jury instruction because evidence supported that she was afraid of retaliation from Chandler if she refused to buy pseudoephedrine or attempted to leave. "When reviewing whether a defendant is entitled to a particular instruction, we review in a light most favorable to defendant." *State v. Edwards*, 980 S.W.2d 75, 76 (Mo.App. 1998) (citing *State v. Howard*, 949 S.W.2d 177, 180 (Mo.App. 1997)). "A defendant is entitled to an instruction on any theory which the evidence tends to establish." *State v. Hopson*, 891 S.W.2d 851, 852 (Mo.App. 1995).

Defendant testified during the trial as follows. At the time of her arrest, she and Chandler had been living together for five years. After they had been together for two years, Chandler began struggling with drug abuse and entered counseling as part of his drug court program. After he completed his drug court program, Chandler began making methamphetamine. At this point, their relationship began to change. Chandler would "sometimes" become abusive if Defendant did not help him make the drugs or if Defendant did not buy pseudoephedrine. Chandler rarely let Defendant attend family functions or allow her family to visit her. One time, Defendant tried to leave Chandler but he followed her, became abusive, and brought her back to their residence. Early in the morning on the day that Defendant's residence was searched, Defendant had argued with Chandler. Defendant's photograph from the day that she was taken into custody showed a bruise in the middle of her forehead, although Defendant did not offer any explanation for the cause of that bruise. Defendant knew that Chandler used the pseudoephedrine that she purchased to make methamphetamine. Defendant made numerous purchases of pseudoephedrine in public places but made no attempt to ask anyone for help

8

leaving Chandler. Defendant had a cell phone, and Chandler did not stop her from calling or texting. Defendant never tried to call the police for help. Chandler did not threaten Defendant with death or serious physical injury on the night that their residence was searched.

Defendant proposed the following instruction, which, despite the bracketed errors, mirrors MAI-CR 310.24:

> As to Count ____ and/or Count ____ if you find and believe from the evidence beyond a reasonable doubt that the defendant engaged in the conduct submitted in Instruction No. ____ and/or Instruction No. ____, you will then decide whether or not at that time she acted under duress.
>
> As to Count ____ and/or Count ____, if you find and believe that it is [more probably] true than not true,
>
> First, that Justin Chandler threatened the imminent use of physical force against the defendant, and
>
> Second, that this threatened use of force was such that a person of reasonable firmness in the defendant's situation would not have been able to resist, and
>
> Third, that defendant was thereby coerced into engaging in the conduct submitted in Instructions No. ____ and [____, and]
>
> Fourth, that defendant did not recklessly place herself in a situation in which it was probably [sic] that she would be subjected to threatened use of such force, then you must find the defendant not guilty [under Count ____ and/or Count ____] by reason of acting under duress.
>
> As used in this instruction, a person acts recklessly as to the existence of a situation if he consciously disregards a substantial and unjustifiable risk that such a situation exists and such disregard constitutes a gross deviation from the standard of care which a reasonable person would exercise.

The affirmative defense of duress is codified at section 562.071[6] and provides:

> 1. It is an affirmative defense that the defendant engaged in the conduct charged to constitute an offense because he was coerced to do so, by the use of, or threatened imminent use of, unlawful physical force upon him or a third person, which force or threatened force a person of reasonable firmness in his situation would have been unable to resist.

---

[6] Statutory references to Section 562.071 are to RSMo 2000.

9

2. The defense of "duress" as defined in subsection 1 is not available:
(1) As to the crime of murder;
(2) As to any offense when the defendant recklessly places himself in a situation in which it is probable that he will be subjected to the force or threatened force described in subsection 1.

To constitute an affirmative defense, duress requires coercion that is present, imminent, and impending. *State v. Crenshaw*, 14 S.W.3d 175, 177-78 (Mo.App. 2000) (quoting *State v. Rumble,* 680 S.W.2d 939, 942 (Mo. banc 1984)). Threat of future injury is not enough. *Id.* Additionally, duress cannot be claimed as a defense where the defendant had a reasonable opportunity to avoid doing the act without undue exposure to death or serious bodily injury. *Id.* Duress would be an appropriate instruction, for example, when the defendant is under immediate surveillance, *see e.g.*, *State v. St. Clair*, 262 S.W.2d 25 (Mo. 1953), or when someone holds a gun to the defendant's head, *see e.g.*, *Crenshaw*, 14 S.W.3d at 178.

In *State v. Lane*, an inmate carrying a balloon of marijuana was convicted of possession of a controlled substance on the premises of a correctional facility. 834 S.W.2d 242, 243-46 (Mo.App. 1992). The inmate claimed duress because his girlfriend had received threatening letters and because other inmates had pressured him to carry the contraband. *Id.* On appeal, the denial of his duress defense was affirmed because he could have sought protective custody in prison and threats to his girlfriend could have been referred to law enforcement such that any threat of harm was a threat of future harm, not a present, imminent and impending harm. *Id.*

Similarly, Defendant here was not entitled to an instruction on duress because she had numerous opportunities to ask for help and did not do so. Defendant's testimony at trial was that if she didn't buy pseudoephedrine, she and Chandler would "probably" argue and then he "might" hit her. Defendant contends that she is entitled to an instruction on duress because one unspecified time when she attempted to leave Chandler, he tracked her down and forced her to

10

return, and he would beat her if she refused to buy pseudoephedrine. Essentially, Defendant argues that she could not leave Chandler despite her numerous opportunities to phone for help or to ask for help when she was in public without Chandler. Defendant, however, makes no argument demonstrating how the evidence supports that the threat of harm to Defendant was present, imminent, and impending at the time of the charged offense. The use of duress as a complete defense in this instance would negate the requirement that the threat of harm be present, imminent, and impending and would remove any burden on Defendant to pursue available avenues of relief from criminal conduct. Under the facts in this case, the evidence does not support an instruction on duress. Defendant's third point is denied.

## Decision

The trial court's judgment is affirmed.


GARY W. LYNCH, J. – Opinion author

NANCY STEFFEN RAHMEYER, J. – concurs

DON E. BURRELL, J. - concurs


11