

# Missouri Court of Appeals
## Southern District

### In Division

STATE OF MISSOURI,     )
    )
    Plaintiff-Respondent,     )
    )
v.     )     No. SD37396
    )
MICHAEL ANTHONY NUGENT,     )     **Filed: April 18, 2023**
    )
    Defendant-Appellant.     )

APPEAL FROM THE CIRCUIT COURT OF TEXAS COUNTY

Honorable William E. Hickle

**<u>AFFIRMED</u>**

Michael Anthony Nugent ("Defendant") waived his right to a jury, and after a bench trial, he was convicted of first-degree murder, unlawful use of a weapon, and armed criminal action. *See* sections 565.020, 571.030, and 571.015.[1] In two points on appeal, Defendant claims the circuit court erred in: (1) denying Defendant's motion to suppress his confession to the police; and (2) entering judgment and sentencing him on the first-degree murder and armed criminal action counts[2] because the evidence adduced at trial was insufficient to

---

[1] Unless otherwise indicated, all statutory citations are to RSMo 2016.
[2] Because Defendant makes no attempt to demonstrate that deliberation is an element of armed criminal action, we consider that portion of his point to be abandoned.

1

prove that Defendant deliberated before killing his victim ("Victim").  Finding no merit in either claim, we affirm.

### The Relevant Evidence[3]

Two days before Victim was murdered, Victim had borrowed Defendant's motorcycle, led police on a chase with it, and abandoned it in a ditch.  Two days later, at approximately 6:45 a.m. on October 10, 2019, Defendant and Victim were seen on the side of the road at the intersection of Highway W and Highway 17 in Summersville.  Defendant's motorcycle was parked on the side of the highway and Defendant was approaching Victim on foot.

Soon thereafter, Chris Wynn ("Mr. Wynn") drove by and saw Victim lying in the ditch.  Mr. Wynn got out of his car and went to check on Victim.  Victim told Mr. Wynn, "I've been shot twice[,]" and he also said that the shooter had left.  Mr. Wynn called 9-1-1, and the dispatcher told him that they needed to know the shooter's identity.  When Mr. Wynn then asked Victim who had shot him, Victim said, "[Defendant] shot me."  Mr. Wynn then asked, "Did you say [Defendant] shot you?"  Victim replied, "Yes, sir."

When the paramedics arrived, Victim also told them that Defendant had shot him.  Victim died after he arrived at the hospital.  Defendant had fled the area, but he was located and arrested later that day.

An autopsy revealed that Victim had been shot once in the front of the chest.  The bullet injured his lung and liver, which caused significant internal bleeding that resulted in Victim's death.  Blood spots were located on the road about 8 or 9 feet from where Mr.

---

[3] On appeal, we view all evidence in the light most favorable to the result, and we disregard all contrary evidence and inferences.  **State v. Sinks**, 652 S.W.3d 322, 334 (Mo. App. E.D. 2022).  We mention contrary evidence solely to provide context for Defendant's arguments.

Wynn found Victim in the ditch, and a .45-caliber shell casing was located thirty feet away from the blood spots.

Shortly after the shooting, Defendant called Cynthia McCormick ("Ms. McCormick") and drove his motorcycle to her house, disposing of his gun somewhere along the way. When he got to Ms. McCormick's house, he hid his motorcycle in its crawl space and covered it with insulation.

Defendant was arrested that evening and was placed in the jail on a 24-hour hold. When he was advised of his *Miranda*[4] rights, Defendant stated that he did not want to talk to law enforcement without an attorney. The following morning, Defendant requested to speak with county authorities about his charges. He initially denied being involved in the shooting, then later admitted to shooting Victim. Because Victim had ditched Defendant's motorcycle, Defendant wanted to hurt Victim. Defendant said that he tried to get into a fight with Victim, telling him, "[C]ome fight me or I'm going to shoot you[.]"

Defendant did so, admitting that he cocked his .45 Kimber, semi-automatic handgun, lifted it up, and fired it at Victim. The gun Defendant used had a double safety, which meant that Defendant had to disengage both safeties before he could fire the gun. Defendant pulled Victim into the ditch after shooting him.

## Analysis

### *Point 1 – Voluntariness of Defendant's Confession*

Defendant's first point claims the circuit court erred in overruling his motion to suppress evidence and statements because Defendant did not voluntarily waive his right to remain silent. We disagree.

---

[4] *Miranda v. Arizona*, 384 U.S. 436 (1966).

3

When reviewing the denial of a motion to suppress, we review the evidence presented at both the motion hearing and the trial, *State v. Goff,* 129 S.W.3d 857, 861–62 (Mo. banc 2004), and we will uphold the trial court's decision unless it is clearly erroneous. *State v. Guinn,* 453 S.W.3d 846, 849 (Mo.App.S.D.2014). The trial court's ruling must be supported by substantial evidence, and we view all facts and reasonable inferences in the light most favorable to the ruling, disregarding all contrary evidence and inferences. *Id.*

**State v. Biggerstaff**, 496 S.W.3d 513, 514 (Mo. App. S.D. 2016).

The Due Process clause of the Fourteenth Amendment prohibits convictions based in whole or in part on involuntary confessions. *State v. Brown,* 246 S.W.3d 519, 528 (Mo.App.2008). *See also Miller v. Fenton,* 474 U.S. 104, 109–10, 106 S.Ct. 445, 88 L.Ed.2d 405 (1985). "The test for voluntariness is whether, under the totality of the circumstances, the defendant was deprived of free choice to admit, to deny, or to refuse to answer and whether physical or psychological coercion was of such a degree that defendant's will was overborne at the time he confessed." *Brown,* 246 S.W.3d at 528; *see also State v. Rousan,* 961 S.W.2d 831, 845 (Mo. banc 1998). Factors we consider in evaluating the totality of the circumstances include, but are not limited to, whether the defendant was advised of his rights and understood them, the defendant's mental and physical state, the length of questioning, and the withholding of food, water, or other physical needs. *Rousan,* 961 S.W.2d at 845. *Evidence of police coercion is necessary to find that a confession is involuntary and thus inadmissible. Id.*

**State v. Phillips**, 319 S.W.3d 471, 477 (Mo. App. S.D. 2010) (emphasis added). *See also*

**Colorado v. Connelly**, 479 U.S. 157, 167 (1986) (holding that "coercive police activity is a

necessary predicate to the finding that a confession is not 'voluntary' within the meaning of

the Due Process Clause of the Fourteenth Amendment").

In support of his point, Defendant argues that "[t]he totality of the circumstances,

given the combination of [Defendant]'s mental illness, intoxication, family dysfunction, and

sexual abuse history, demonstrate that [Defendant] did not submit to questioning

voluntarily." Defendant asserts that he suffers from a long history of mental illness,

including post-traumatic stress disorder, bipolar disorder, and that he had been subjected to

years of sexual abuse. Defendant also claims that his mental illness was exacerbated on the day before he made his confession by his use of marijuana, methamphetamine, and LSD.

Chief Deputy Rowdy Douglas ("Deputy Douglas") testified that he had almost six years of undercover experience being around those under the influence of drugs, including LSD, "almost daily." Deputy Douglas testified that Defendant "knew exactly what was going on" and did not appear to be under the influence of any controlled substance. Sheriff Scott Lindsey testified similarly.

But even if Defendant was impaired during his interrogation, that circumstance would not advance his claim on appeal. Without evidence of police coercion, a defendant cannot show that his confession was involuntary. *See* ***Phillips***, 319 S.W.3d at 477. Here, Defendant failed to plead, let alone prove, that his confession was coerced. While the factors Defendant cites – intoxication, abuse, and mental illness – may be relevant to the reliability of his statements, they do not speak to whether they were given voluntarily. ***Id.***

Point 1 fails.

*Point 2 – Sufficiency of the Evidence of Deliberation*

Defendant's second point claims the circuit court erred in denying his motion for judgment of acquittal at the close of the evidence and entering judgment for first-degree murder and armed criminal action because the state failed to prove beyond a reasonable doubt that Defendant acted with deliberation after cool reflection. As earlier noted, we will address the claim only in regard to the first-degree murder count.

"Appellate review of sufficiency of the evidence is limited to whether the State has introduced adequate evidence from which a reasonable finder of fact could have found each element of the crime beyond a reasonable doubt." ***Lammers***, 479 S.W.3d at 632. A

5

defendant commits first-degree murder if he knowingly causes the death of another person after deliberation upon the matter. Section 565.020.1.

> "Deliberation means cool reflection for any length of time no matter how brief." § 565.002(3). "Deliberation is not a question of time—an instant is sufficient-and the reference to 'cool reflection' does not require that the defendant be detached or disinterested." *State v. Nathan,* 404 S.W.3d 253, 266 (Mo. banc 2013). "Instead, the element of deliberation serves to ensure that the jury believes the defendant acted deliberately, consciously and not reflexively." *Id.* Further, deliberation need only be momentary. [*State v. Frazier,* 404 S.W.3d 407, 414 (Mo.App. W.D. 2013)] (citation omitted).

*State v. Shaddox*, 598 S.W.3d at 695-96 (quoting *State v. Olivas*, 431 S.W.3d 575, 580 (Mo. App. W.D. 2014)).

"Bad-blood evidence[,]" meaning evidence of a pre-existing relationship between the victim and the defendant prior to the murder that provides a motive for the killing, is relevant to the issue of deliberation. *State v. Miller*, 220 S.W.3d 862, 868 (Mo. App. W.D. 2007). Here, Defendant admitted that he was upset because Victim had abandoned Defendant's motorcycle in a ditch. Defendant also told Victim: "[C]ome fight me or I'm going to shoot you[.]" Defendant admitted to cocking the gun, lifting his arm up, and firing at Victim, all of which indicated deliberation. *See State v. Mills*, 623 S.W.3d 717, 725 (Mo. App. E.D. 2021). After the shooting, Defendant dragged Victim into a ditch and then fled the area. Post-shooting flight and the failure to seek medical help for Victim also supports an inference that Defendant deliberated before killing Victim. *Id.*; *see also State v. Strong*, 142 S.W.3d 702, 717 (Mo. banc 2004).

Point 2 also fails, and the judgment of the circuit court is affirmed.

DON E. BURRELL, J. – OPINION AUTHOR

JENNIFER R. GROWCOCK, J. – CONCURS

GINGER K. GOOCH, J. – CONCURS

6